**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:11CV-00043-JHM**

**TIG INSURANCE COMPANY**                                                      **PLAINTIFF**

**v.**

**HOSPITAL CORPORATION OF AMERICA**                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Defendant, Hospital Corporation of America, to dismiss this action for lack of subject matter jurisdiction [DN 70] and for leave to file an amended answer and counterclaim [DN 72]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

Plaintiff, TIG Insurance Company ("TIG"), issued an excess workers' compensation insurance policy for the period of September 1, 1990, through September 1, 1992, to Defendant Hospital Corporation of America's predecessor Humana, Inc. During the policy period, Hospital Corporation of America ("HCA") was self-insured for the first $2,500,000 per occurrence; thereafter, TIG was obligated to reimburse HCA for certain losses and expenses, pursuant to the terms, conditions, endorsements of the excess workers' compensation insurance policy. In August of 1992, a former HCA employee, Eileen Gardner, submitted a workers' compensation claim to HCA. HCA notified TIG of the Gardner workers' compensation claim in January 2007. In response to the notice, TIG issued a reservation of rights letter dated February 12, 2007, notifying HCA that its untimely notice of the claim "may serve to bar coverage under the terms of the policy." (Feb. 12, 2007 Reservation of Rights at 2.) On June 30, 2010, HCA requested reimbursement on the Gardner claim from TIG. On September 10, 2010, TIG sent HCA a

second reservation of rights letter advising HCA that its prior reservation of rights remained in effect and that it continued to believe that the claim may not be covered under the policy. (Sept. 10, 2010 Reservation of Rights at 5-8.)

In March of 2011, Plaintiff, TIG Insurance Company, filed this declaratory judgment action seeking the Court's declaration that it has no duty to defend or provide coverage for HCA under TIG's excess worker compensation insurance policy with regard to Gardner's workers' compensation claim. TIG argues that HCA failed to provide timely notice of the Gardner claim to TIG in violation of a condition precedent to coverage under the excess workers' compensation policy. Specifically, TIG maintains that the policy required notice to be given to TIG immediately upon an injured worker sustaining "disability for a period of nine months or more." (Roth Decl., Exhibit A, 2-3.) In July of 2011, HCA filed an answer and counterclaim against TIG seeking declaratory relief that TIG has an obligation to indemnify HCA for all losses and sums it has paid or has been obligated to pay for the Gardner claim in excess of the self-insured retention and for breach of contract.

Over two and a half years later[1], HCA filed this current motion to dismiss this action for lack of subject matter jurisdiction arguing that the Court should refuse to exercise its discretionary jurisdiction over TIG's declaratory judgment claim. Additionally, HCA argues that dismissal of the complaint is warranted under Fed. R. Civ. P. 12(b)(1) because there is not an actual case and controversy between the parties. HCA also moves to amend its counterclaim in order to add counterclaims for common-law bad faith and statutory bad faith against TIG and to withdraw its declaratory judgment counterclaim against TIG.

---

[1] HCA correctly points out that it filed the same motion to dismiss for lack of jurisdiction on April 27, 2012; however, due to the parties settlement negotiation, the Court dismissed the motion with leave to refile.

## II.  MOTION TO DISMISS

### A.  Declaratory Judgment Act

A court's exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory.  Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942)).  Instead, the Sixth Circuit has held that courts must examine five factors to determine whether a case is appropriate for declaratory judgment. Id. at 813. These factors are:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

Id. (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000) (citations omitted)).

### 1.  Settlement of the Controversy & Clarification of Legal Relations

In the context of lawsuits by insurance companies to determine policy coverage obligations, most courts consider the first and the second factors together.  See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008) (noting that "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue").  However, there is a split within the Sixth Circuit regarding each factor.  One line of cases suggests that the declaratory judgment action must settle the entire controversy that is ongoing in state court and clarify the legal relationship between all the parties.  See Travelers Indem. Co. v. Bowling Green Professional Associates, PLC, 495 F.3d 266, 271 (6th Cir. 2007)

(holding that the failure to resolve the controversy or clarify the legal relationship between all the parties in the underlying state case weighed against exercising jurisdiction).  Another line of cases suggests that the declaratory judgment need only settle the controversy and clarify the relations between those involved in the declaratory judgment action.  See Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003) (holding that the first factor weighed in favor of accepting jurisdiction because the declaratory judgment would settle the insurance coverage issue between the parties).

The Sixth Circuit recognized this apparent conflict in Flowers, noting that "[t]he difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." 513 F.3d at 555. The Court then went on to present an alternative explanation, stating that "the contrary results in these cases might also be explained by their different factual scenarios." Id.  Specifically, where the Sixth Circuit required the declaratory action to resolve the entire controversy and clarify the legal relations between all parties, there were factual disputes regarding the insured that would have to be resolved in the declaratory judgment action.  See, e.g., Bituminous Cas. Corp., 373 F.3d at 813 (recognizing a dispute as to whether the injured party was the insured's employee). In each of the cases where the Sixth Circuit reached the opposite conclusion, such factual disputes did not exist. See, e. g., Northland Ins. Co., 327 F.3d at 454.

Some federal courts are not persuaded by these Flowers explanations, finding that the Sixth Circuit has essentially adopted contrary, irreconcilable positions. See, e.g., Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am., 565 F. Supp. 2d 779, 787 (E.D. Ky.  2008). The Court shares many of these courts' concerns. However, there are factual distinctions between the lines of

4

cases that post- Flowers courts have found important. See, e.g., Auto Owners Ins. Co. v. Aldridge, 2009 WL 4782115, *2–3 (E.D. Ky. Dec. 7, 2009). Therefore, as stated in previous opinions, this Court joins those cases in concluding that where the district court in the declaratory judgment action will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy and clarify the legal relations between the parties in the district court.

In this case, it appears that the only issues to be decided by the Court in the declaratory relief action are whether HCA failed to provide timely notice of the Gardner claim and whether TIG is entitled to deny coverage as a result. To make a determination on these issues, the Court will have to examine the policy language, determine when notice was required to be given under the policy, and determine if the notice given by HAC to TIG was timely. Therefore, here, the Court will not be addressing the merits of the Gardner's workers' compensation claim. Further, the issues presented in this case will not affect or disturb the resolution of the issues presented in the workers' compensation case. Accordingly, the Court finds that this declaratory action will settle the parties' controversy[2] and clarify the coverage issues between the insurance company and its insured. The first two factors weigh in favor of exercising jurisdiction.

### 2. Procedural Fencing and Res Judicata

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" Flowers, 513 F.3d at 558 (citing AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)). The Sixth Circuit has held that it is

---

[2] If the Court were to permit the proposed amendment to the Defendant's counterclaim and permit a bad faith claim, the declaratory judgment may not settle the question of whether TIG acted in bad faith. Even if the Court were to decide that the first factor weighs against exercising jurisdiction, it would not change the outcome of the decision.

5

"reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Id.

HCA maintains that it is the natural plaintiff in this case because it is claiming a right to coverage for the Gardner claim. HCA contends that this factor weighs in favor of dismissing TIG's declaratory judgment action because TIG sued HCA after participating in the defense of the Gardner claim for over four years and participating in settlement negotiations. HCA argues that by suing first, TIG seized for itself the valuable position of being the plaintiff in the action and being able to present evidence first. While acknowledging that insurance companies are permitted to bring declaratory judgment actions in certain circumstances, HCA argues that TIG is abusing the declaratory judgment remedy in order to gain a procedural advantage over the natural plaintiff by filing first.

In this case, contrary to the arguments of the Defendant, there is no evidence of a "race for judicata" or an improper motive. TIG issued a reservation of rights to HCA on February 12, 2007, less than a month after being notified of the Gardner claim. The letter identified its concerns regarding HCA's notice in reporting the Gardner claim. Additionally, on June 30, 2010, HCA requested reimbursement on the Gardner claim from TIG. In September of 2010, TIG sent a second reservation of rights letter reiterating its concerns regarding the delayed reporting of the claim. TIG then waited seven months after issuing its second reservation of rights prior to filing suit. The undisputed facts belie HCA's argument of a race to the courthouse. Additionally, the fact that TIG participated in the defense of the Gardner claim does not negate TIG's reservation of rights. Furthermore, counsel indicated that HCA would have chosen the federal district court forum. For these reasons, the Court finds that factor weighs in favor of exercising jurisdiction.

### 3.  Increase of Friction and Improper Encroachment

As to the fourth factor, the Sixth Circuit has held that courts must analyze three additional sub-factors when determining whether an exercise of jurisdiction would increase friction between the federal and state courts. These factors are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous Cas. Corp., 373 F.3d at 814–15 (citing Scottsdale, 211 F.3d at 968). The Court considers each sub-factor in turn.

*Importance of Underlying Factual Issues to Resolution of Case.* The first sub-factor weighs in favor of exercising jurisdiction, as the coverage question is not dependent on the outcome of a factual inquiry made in the underlying state workers' compensation claim.  As discussed above, the main issue to be decided in this action is whether TIG is obligated to defend or provide coverage for HCA under TIG's excess worker compensation insurance policy with regard to Gardner's workers' compensation claim.  Since this issue can be answered by referencing the insurance policy, any underlying factual issues in the workers' compensation claim are not important to an informed resolution of this case. The first sub-factor thus weighs in favor of exercising jurisdiction.

*State Court's Position to Evaluate Factual Issues.* The Court also finds that the second subfactor weighs in favor of exercising jurisdiction. As to this factor, the question is whether the Kentucky court is in a better position to evaluate the factual issues than the federal court. It is not. Again, there is little overlap, if any, between the factual issues presented in the workers'

compensation action and this declaratory judgment action, and the state court is not in a better position to address the issues presented. Importantly, the insurance company is not a party to the workers' compensation claim and neither the scope of insurance coverage nor the obligation to defend is before a state court.

*Close Nexus between Issues and State Law and Policy.* With respect to the third sub-factor, the Court finds that it does weigh against exercising jurisdiction. The interpretation of insurance contracts is a "question[ ] of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." Bituminous, 373 F.3d at 815. Thus, there is a close nexus between the underlying legal issues and state policy and this sub-factor weighs against exercising jurisdiction. Nevertheless, this does not mean that the Court must abstain from hearing the matter. After all, "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." Flowers, 513 F.3d at 561. In this case, the question is whether HCA timely reported the claim to TIG. Kentucky courts are clear on the interpretation of contractual language. See Bituminous Cas. Corp. v. Kenway Contracting, Inc., 240 S.W.3d 633, 638 (Ky. 2007). The Court thus finds that while the third sub-factor weighs against the exercise of jurisdiction, this does not mandate dismissal of the case. The overall effect of the three sub-factors (and thus the overall effect of the fourth factor) still supports the Court's exercise of jurisdiction.

### 4. Alternative Remedy

Finally, the Court must consider the fifth factor: whether there is an alternative remedy that would be better or more effective. As is almost always the case, there are alternative remedies. For example, Kentucky provides a declaration of rights procedure. See K.R.S. § 418.040. The Court finds, however, that the facts do not suggest that the Kentucky state court

forum would be better or more effective for this declaratory judgment action. Additionally, both parties agree that this Court the proper venue for resolution of the dispute. Because the Court finds that the relevant factors weigh in favor of its exercise of jurisdiction, the Court will exercise federal discretionary jurisdiction over this declaratory judgment action.

### B. Actual Controversy

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." Gentek Bldg. Products, Inc. v. Sherwin–Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

HCA argues that dismissal of the complaint is warranted under Fed. R. Civ. P. 12(b)(1) because there is not an actual case and controversy between the parties. HCA maintains that TIG has admitted that it has not denied the claim, but instead requests the Court to advise it on how it should handle HCA's claim. "The Sixth Circuit has held that a 'declaratory judgment generally

9

is sought before a completed injury-in-fact has occurred. . . . Nevertheless, when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief.'" KeyBank National Association v. First American Title Ins. Co., 2011 WL 4625969, *3 (N.D. Ohio Sept. 30, 2011)(quoting Peoples Rights Organization, Inc. v. City of Columbus, 152 F.3d 522, 527 (6th Cir. 1998) (internal citations omitted)). "The Sixth Circuit explained that 'it is clear that an individual does not have to await the consummation of threatened injury to obtain preventive relief. . . . Rather, if the injury is certainly impending, that is sufficient.'" Id. (citing Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289 (1979)).

Applying these standards, the Court finds that TIG has pleaded an actual controversy sufficient to survive dismissal. TIG has pleaded actual harm, for example, HCA requested reimbursement on the Gardner claim from TIG in June of 2010, and, HCA has refrained from granting the request and issued reservation of rights letters advising HCA that it believed that it has no duty to defend or provide coverage for Defendant under the excess worker's compensation insurance policy because HCA failed to provide timely notice of the Gardner claim to TIG. Additionally, in TIG's complaint, TIG requests the Court to declare that "TIG has no legal duty or obligation, whether contractual, equitable or otherwise to DEFENDANT HOSPITAL CORPORTATION OF AMERICA under TIG's excess worker compensation insurance policy, with regard to the workers' compensation claim of . . . Eileen Gardner." (Complaint, Prayer for Relief ¶ 1.)

The purpose of the declaratory judgment action on an insurance policy is to determine the extent of coverage, the duty to defend, or other issues arising from the insurance contract. Based on the allegations contained in the complaint and given HCA seeks reimbursement, the Court

10

finds that TIG seeks declaratory relief on an actual case or controversy. Accordingly, HCA's motion to dismiss is denied.

### III. MOTION TO AMEND ANSWER AND COUNTERCLAIM

Defendant seeks leave to amend its Answer and Counterclaim in order to add counterclaims for common law bad faith and statutory bad faith against TIG and to withdraw its declaratory judgment counterclaim. TIG does not object to HCA's motion to withdraw its declaratory judgment action. However, TIG objects to the motion to amend the counterclaim to add the bad faith claims. In the event the Court permits HCA to amend its counterclaim, TIG moves to bifurcate and hold discovery in abeyance of the bad faith claims.

**A. Motion to Amend**

Fed. R. Civ. P. 15(a)(2) states that after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court should freely grant a plaintiff leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The determination of whether the circumstances of a case are such that justice would require the allowance of an amendment is committed to the sound discretion of the district court. Hayden v. Ford Motor Co., 497 F.2d 1292, 1294 (6th Cir. 1974). A trial court may consider a number of factors in making this determination, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. Foman v. Davis, 371 U.S. 178, 182 (1962). In the absence of any of these factors, a plaintiff should be afforded the opportunity to amend its complaint. Id.

First, TIG argues that the motion to amend should be denied because of HCA's undue delay in seeking the amendment. TIG contends that HCA was aware at the time it filed its

11

answer and counterclaim of TIG's reservation of rights and position that HCA failed to timely report the claim. While delay alone ordinarily does not justify denial of leave to amend, at some point "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002)(quoting Adams v. Gould, Inc., 739 F.2d 858, 863 (3d Cir. 1984)). "Courts typically find undue delay in cases that are post-judgment . . . and in cases where discovery has closed and dispositive motions deadlines have passed." Owners Insurance Co. v. Hutsell, 2014 WL 2460132, *3 (E.D. Tenn. June 2, 2014). Here, the delay is not undue given the fact that limited discovery has taken place and no scheduling order has been entered in the case. Furthermore, TIG has not articulated that delay would cause them any prejudice. Accordingly, the undue delay argument fails.

Second, TIG argues that the amendment of the counterclaim is futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) (internal citations omitted). "The bad faith inquiry essentially probes whether, 'in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.'" Philadelphia Indem. Ins. Co. v. Youth Alive, Inc., 732 F.3d 645, 649-650 (6th Cir. 2013)(quoting Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 732 (6th Cir. 2012) (internal quotation marks omitted). In its proposed counterclaim, HCA brings both statutory and common law bad faith claims alleging in part that TIG failed to implement reasonable standards for the prompt investigation of HCA's claim under the policy and has refused to pay TIG's claim in violation of the Kentucky Unfair Claims Settlement Practices Act and common law duty of good faith and fair dealing. (Answer and Counter claim

¶30-¶33, ¶51-¶53.) A review of the counterclaim reveals that HCA has sufficiently pleaded facts to support the bad faith claims. Because the proposed bad faith claims could withstand a Rule 12(b)(6) motion to dismiss, HCA's proposed amendment is not futile. As such, the motion to amend is granted.

### B. TIG Motion to Bifurcate

TIG moves to bifurcate the bad faith claims in the event the Court permitted HCA to amend its counterclaim. Federal Rule of Civil Procedure 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, [or] crossclaims." "Courts should look to case-specific facts to determine whether bifurcation is proper, placing the burden on the party seeking bifurcation to show separation of issues is the most appropriate course." Nationwide Mutual Fire Ins. Co. v. Jahic, 2013 WL 98059, *2 (W.D. Ky. Jan. 7, 2013)(citing Brantley v. Safeco Ins. Comp. of America, 2011 WL 6012554, at *1 (W.D. Ky. Dec. 1, 2011)). The Sixth Circuit listed "potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy" as other important considerations in determining whether to bifurcate. Brantley, 2011 WL 6012554, *1 (quoting Wilson v. Morgan, 477 F.3d 326, 339 (6th Cir. 2007)).

Numerous courts "throughout Kentucky, and beyond, . . . have considered insurance contract claims and bad faith claims and consistently granted motions to bifurcate and stay discovery." Everage v. Safeco Inc. Co. of Illinois, 2013 WL 5888287, *1 (E.D. Ky. 2013). Bruckner v. Sentinal Ins. Co., 2011 WL 589911, *2 (E.D. Ky. Feb. 10, 2011); Brantley, 2011 WL 6012554, at *2 (citing several cases); Hoskins v. Allstate Prop. & Cas. Ins. Co., 2006 WL 3193435, at *2 (E.D. Ky. Nov. 2, 2006). Bifurcation is so prevalent in this area because of the three elements that must be proven to prevail on a bad faith claim:

> (1) the insurer is obligated to pay the claim under the terms of the policy; (2) the insurer lacks a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

Everage, 2013 WL 5888287, *2 (citing Bruckner, 2011 WL 589911, *2). Thus, HCA prevails on the breach of contract action, HCA will be unable to properly support all of those elements. Thus, "one issue may obviate the need to try another issue . . . and judicial economy may be furthered by bifurcating the claims." Id.; Smith v. Allstate, 403 F.3d 401, 407 (6th Cir. 2005)). Furthermore, the Court recognizes TIG's prejudice inherent in trying the bad-faith claim simultaneously with the parties' coverage issue. The risk of prejudice to either party is minimal. Therefore, the Court grants TIG's motion to bifurcate.

**C. Motion to Stay Discovery**

The decision to stay discovery on a bad-faith claim while the underlying contract claim is pending is likewise within the discretion of the trial court. Smith v. Allstate Ins. Co., 403 F.3d 401, 407 (6th Cir. 2005). "Where the bad-faith claim depends on resolution of the underlying contractual dispute regarding the policy of insurance, it is reasonable for a court to resolve the coverage question before allowing the bad-faith claim to proceed." Nationwide Mut. Fire Ins., 2013 WL 98059, *2. "Staying discovery of the bad-faith claim pending resolution of the underlying contractual dispute would both prevent prejudice and further judicial economy." Id. at *3 (citing Brantley, 2011 WL 6012554, at *3; Bruckner, 2011 WL 589911, at *2; Secura Ins. Co. v. Gorsick, 2008 WL 152101, at *2 (W.D. Ky. Jan. 15, 2008); Pollard v. Wood, 2006 WL 782739, *2–3 (E.D. Ky. Mar. 27, 2006)). Accordingly, the Court finds that staying discovery of HCA's bad-faith claims pending resolution of the coverage issue would prevent prejudice, eliminate potentially unnecessary litigation expenses, and also further the interests of judicial

economy.  Forest B. White, Jr. Masonry, Inc. v. ABC Caulking Contractors, Inc., 2014 WL 991734, *1 (W.D. Ky. March 13, 2014).  Accordingly, the Court will grant TIG's motion to stay discovery.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Hospital Corporation of America, to dismiss this action for lack of subject matter jurisdiction and for a hearing [DN 70] is **DENIED** and its motion for leave to file an amended answer and counterclaim [DN 72] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion by Plaintiff, TIG Insurance Company, to bifurcate and stay discovery is **GRANTED**.  Discovery relating to HCA's bad faith claims is stayed pending resolution of the underlying coverage dispute.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 7, 2014